THOMPSON, et al, vs MORGAN, et al.

Opinion delivered September 25, 1902.

1. *Appeal—Adding New Parties—Exceptions to, Preserved by Motion to Strike Out their Pleadings.*

Where new parties are brought into an action by order of court without specific objection to such action, but motion is made to strike out the pleading filed by such new parties, and exception saved to the overruling of such motion, the question of the correctness of the court's action in bringing in new parties is fully preserved from review by Appellate Court.

2. *Indian Lands—Unlawful Detainer—Indian Nations not Proper Parties.* Act of Congress June 28, 1898, Section 2 (30 Stat. 495) provides that in the progress of any suit in the U. S. Courts in Ind. Ter., it appears that the property of any tribe is affected, such tribe shall be made a party. Section 29 of said Act provides that where provisions of the Act and of the Atoka Agreement, incorporated therein, conflict, the terms of the Agreement shall prevail. The Atoka Agreement (Sec. 44 Curtis Bill) provides that the nations shall be made parties only when it appears that such tribes are interested in the subject matter of the controversy. *Held,* that in an action of unlawful detainer, which is only maintained by a landlord against a tenant unlawfully holding over, the Nations have no such interest in the subject matter as entitles them to be made parties therein.

3. *Indian Lands—Unlawful Detainer—Citizenship of Parties Immaterial.*

> An action of unlawful detainer is founded upon a breach of contract and can only be maintained where the relation of landlord and tenant exists. In such cases, though involving right of possession of Indian lands, the citizenship of the parties is immaterial.

Appeal from the United States Court for the Southern District.

JOHN R. THOMAS, Judge.

Action by W. J. Thompson and others against William Morgan and others. Judgment for defendant. Plaintiffs appeal. Reversed.

On January 4, 1900, this action was commenced by plaintiffs (appellants here) filing complaint at law against the defendants William and Robert Morgan (appellees here). Summons issued the same day, and returned served on the 26th day of February, 1900. Defendants filed their answer March 3, 1900. The same was not included in the transcript by appellants, but subsequently, on suggestion of diminution of record by defendants' counsel, was brought up by certiorari. It appears that on May 22, 1901, the Choctaw and Chickasaw Nations appeared, and filed an interplea and answer. Counsel for appellants state that said nations or tribes of Indians were made parties by order of the court, upon his own motion. On June 5, 1901, plaintiffs filed a general demurrer and motion to strike out the interplea and answer of said nations, which is as follows: "Now come the plaintiffs, and demur to the interplea and answer filed by the Choctaw and Chickasaw Nations, because the same does not state facts sufficient to constitute a cause of action against the parties to this action in favor of said interpleader. (2) Plaintiffs further demur to said interplea and answer because the same does not state facts sufficient to constitute any defense to the

cause of action set out in the complaint. (3) Plaintiffs further demur to said interplea and answer, and move to strike out the same, because the Choctaw and Chickasaw Nations are neither necessary nor proper parties to this action. Wherefore plaintiffs pray for judgment of the court upon said demurrers and motion. (Signed) Patchell & Pyeatt, Attorneys for Plaintiffs." And on the same day filed a second amended complaint, and alleged that on the 11th day of January, 1899, plaintiff William J. Thompson, "was the owner of and in the actual possession of a certain farm and pasture"; that on said day said plaintiff rented to one Robert Jones the farming lands, with all improvements thereon, commencing on said date, and ending on December 31, 1899; that on the same day said plaintiff rented the pasture lands, with improvements thereon, commencing on the same date, and ending December 31, 1899, to one John Garvin; that said Jones and Garvin went into possession of said farm and pasture, respectively as the tenants of said plaintiff; that subsequently, and on January 15, 1899, said Robert Jones died leaving a widow and minor children, and that George D. Thompson was appointed and qualified as administrator of the estate of Robert Jones, deceased; that subsequently, and on February 15, 1899, said administrator, in compliance with the orders of the court, and in conjunction with the widow of said Robert Jones, deceased, and for a valuable consideration, assigned and conveyed the remainder of the term of said Robert Jones on said farm to the defendants William and Robert Morgan, and said defendants entered into possession as the tenants of plaintiff Thompson; that on May 15, 1899, said Garvin assigned and sublet to defendants William and Robert Morgan the lease on said pasture, and defendants entered into possession of same as tenants of plaintiff Thompson. Plaintiff Thompson further states that on February 13, 1899, for a valuable consideration, he conveyed and assigned to his coplaintiffs, Samuel and Ellen Wall, an undivided three-fourths interest in said farm and pasture, and the improvements thereon.

"Plaintiffs further state that the rental contracts upon said premises and the terms given upon said farm and pasture expired on the 31st day of December, 1899, and that the defendants have failed and refused to quit and deliver up possession of the same, or any part thereof, though notified in writing so to do. Plaintiffs say that on the 7th day of September, 1899, they caused to be served upon the defendants herein written notices requiring said defendants to deliver up said possession of said farm and the pasture to the plaintiffs on the 1st day of January. 1900. And the plaintiffs state that thereafter, to wit, on the 2nd day of January, 1900, without waiving or intending to waive the notices served on defendants on the 7th day of September, 1899, they caused to be served upon the defendants written notices that defendants should quit and deliver up to the plaintiffs the possession of said farm and pasture. The plaintiffs say that defendants, although lawfully notified in writing, refused and failed to quit and deliver up the possession of any part of said premises, and still continue to so unlawfully, forcibly, and wrongfully withhold from plaintiffs the possession of said lands and premises, although plaintiffs are lawfully entitled to the immediate possession of said farm and pasture and the improvements thereon." Plaintiffs say that the reasonable annual rental value of said farm and pasture is $750. Plaintiffs further allege that they are Choctaw Indians by blood, and say "that long prior to the leasing of the premises described in the plaintiffs' complaint to the parties mentioned the plaintiffs were residents of the Chickasaw Nation, and plaintiffs say that they have always enjoyed the rights and privileges of members by blood of the Choctaw Nation, and that under and by virtue of the laws of the Choctaw and Chickasaw Nations and the treaties between said nations and the United States these plaintiffs had the right to reside in the Chickasaw Nation, and hold lands and improvements therein to the exclusion of all persons, and had the right to lease said lands, and to receive the rents arising from

the same, and that they have the right to remain in the possession of the premises sued for, and have the same allotted to them." Plaintiffs further say: That on August 24, 1896, as a matter of precaution, and by reason of the fact that no complete rolls of the Choctaw tribe had been made and approved, they filed their petition with the Dawes commission, to be enrolled as members by blood of the Choctaw Nation. That on September 26, 1896, the Choctaw Nation filed its answer, and on November 20, 1896, the said commission rendered its decision, rejecting plaintiffs as members of the Choctaw Nation, whereupon the plaintiffs appealed to the United States court, and on January 19, 1898, said United States court rendered its judgment, admitting plaintiffs to membership in the Choctaw Nation, as follows: "No. 125. Dick Randolph et al vs Choctaw Nation. Judment. On this, the 19th day of January, 1898, this cause coming on to be heard upon the master's report filed herein in the clerk's office of this court on the 31st day of July, 1897, recommending the enrollment of the persons named in the application herein as members and citizens of the Choctaw Nation of Indians, and it appearing to the court that no exception has been filed to said master's report by the defendant, and that the same is fully supported by the evidence on file in this cause, the court is of the opinion that said master's report should in all things be confirmed. It is therefore ordered, adjudged, and decreed by the court that Dick Randolph and Myrtle Randolph, and Samuel C. Wall and his wife Ellen Wall, and her son by a former husband, William J. Thompson, each and all be enrolled as citizens and members of the Choctaw Nation of Indians. It is further ordered by the court that said named persons do have and recover from the Choctaw Nation their costs in this action expended. It is further ordered by the court that the clerk forthwith transmit a certified copy of decree to the commissioners of the Five Civilized tribes. (Signed) Hosea Townsend, Judge." That afterwards, in pursuance of an act of congress,

the said Choctaw Nation appealed to the Supreme Court of the United States, and on May 15, 1899, "the supreme court of the United States affirmed said judgment, and the said judgment is now in full force and effect." "Plaintiffs say that the holding of the defendants in this action is that of tenants of these plaintiffs, and that the legal possession of said premises as held by the said defendants inured to the plaintiffs, and is in the possession of the plaintiffs herein, and that the said Choctaw and Chickasaw Nations have no right to the possession of the same, or any part thereof, or any part of the rents arising therefrom." Plaintiffs ask judgment against defendants for possession of the premises and against defendants and their sureties on their retaining bond for damages and costs.

The interplea and answer of the Choctaw and Chickasaw Nations, filed on May 22, 1901, alleged: "That the members of said tribes are the owners in fee of the lands of said nations and that the character of their holdings is as follows: 'And pursuant to an act of congress approved May 28, 1830, the United States do hereby forever secure and guaranty the lands embraced within the said limits to the members of the Choctaw and Chickasaw tribes, their heirs and successors, to be held in common; so that each and every member of either tribe shall have an equal undivided interest in the whole: provided, however, no part thereof shall ever be sold without the consent of both tribes; and that said lands shall revert to the United States if said Indians and their heirs become extinct, or abandon the same.' That the lands in controversy in this action belong to said tribes and are embraced within the afore-described lands, their common property. That the plaintiffs, Wm. J. Thompson, et al., are not members of either of said tribes, or one of the joint owners of said lands, or any part of them, nor is he entitled to the possession thereof. That the plaintiffs claim to be members of the Choctaw Nation or Tribe of Indians by virtue of an alleged decree of the

(28)

United States Court for the Southern District of the Indian Territory, sitting at Ardmore, and thereby to have the right to occupy the lands aforesaid; but said alleged decree is void.' They, allege further, "that the defendants are not members of said tribes, and have no rights in said lands as against them, and said nations deny each and every allegation of the answer of defendants herein, and state that they are not entitled to hold said premises by reason of valuable improvements placed thereon under an improvement contract with said tribes or any member thereof," and ask judgment for possession of said lands for costs.

On June 5, 1901, the plaintiffs, without waiving their demurrer to and motion to strike out the interplea and answer of said nations, filed their answer to same. On the same day defendants filed their demurrer to the interplea and answer of said nations, as follows: "Demurrer. Now comes the defendant in the above cause, and demurs to the interplea of the Chickasaw and Choctaw Nations, for the reason that said interplea constitutes no cause of action as against these defendants. (2) Said interplea does not show a present right of possession in the Chickasaw and Choctaw Nations superior to the right of the defendants herein. (3) These defendants further demur to that part of said interplea in which it denies the citizenship of these defendants herein, for the reason that this court has not now original jurisdiction to hear and determine who are citizens of the Chickasaw and Choctaw Nations. Upon all of which these defendants pray judgment of the court that their demurrer to the interplea herein be sustained; that they do have and recover of and from the interpleaders herein their costs in this behalf expended. (Signed) Ledbetter, Bledsoe & Thompson, Attorneys for Defendants."

On June 6, 1901, defendants filed their motion to strike out the interplea and answer of said nations, as follows: "Motion to Strike Out. Now come the defendants in the above cause,

and move the court to strike from the file of this court the inter-plea of the Chickasaw and Choctaw Nations. (Signed) Ledbetter, Bledsoe & Thompson, Attorneys for Defendants." On the same day the demurrers of plaintiffs and defendants to the interplea and answer of said nations and motion of plaintiffs and defend-ants to strike out said interplea and answer were argued together by agreement, and by the court overruled, to which plaintiffs and defendants excepted. On June 8. 1901, the Choctaw and Chickasaw Nations filed their demurrer to plaintiffs' second amended complaint, and to the answer of plaintiffs to the interplea and answer of said nations, as follows: "Come now the Choctaw and Chickasaw Nations, and demur to the plaintiffs' second amended complaint and the answer and reply of the plaintiffs to the answer and interplea of the Choctaw and Chickasaw Nations, for the reason that neither state facts sufficient in law to entitle the plaintiffs to recover, or to constitute a defense to the said interplea and answer. (Signed) Mansfield, McMurray & Cornish, Attys. for Choctaw and Chicka-saw Nations." On the same day the defendants demurred to plaintiff's second amended complaint as follows: "Demurrer to Second Amended Complaint. Now come the defendants in the above cause, and demur to the complaint filed by the plain-tiffs herein, and for their grounds of said demurrer say: That the said complaint does not state facts sufficient to constitute a cause of action. And of this they pray the judgment of the court. (Signed) Ledbetter, Bledsoe & Thompson, Attorneys for Defendants." On the same day came on to be heard the demurrer of defendants to plaintiffs' second amended complaint, and the demurrer of the Choctaw and Chickasaw Nations to plaintiffs' answer to the answer and interplea of said nations, the same being heard together by agreement, and the court sus-tained the same, to which ruling plaintiffs excepted, whereupon plaintiffs declined to plead further in said action, and, the court thereupon rendered the following judgment: "It is ordered and

adjudged by the court that the plaintiffs take nothing by their action, and that they pay the costs hereof; to which judgment the plaintiffs then and there excepted. Thereupon the Choctaw and Chickasaw Nations admit that the defendant Robert Morgan is a recognized member by intermarriage of the Choctaw Nation. It is therefor further adjudged by the court that the Choctaw and Chickasaw Nations take nothing by this action; and it is therefore further adjudged that the defendants have the right to retain possession of the lands sued for, it appearing that they gave bond and remained in possession of said lands from the commencement of this action; and to which judgment as to the right of possession of said lands plaintiffs then and there duly excepted. (Signed) John R. Thomas, Judge." On the same day plaintiffs filed their motion for a new trial, which was overruled by the court, to which plaintiffs excepted. Thereupon plaintiffs prayed an appeal to this court which was granted.

*Patchell & Pyeatt* and *J. G. Ralls*, for appellants.

*Ledbetter, Bledsoe & Thompson*, for appellees.

*Mansfield, McMurray & Cornish*, for Choctaw and Chickasaw Nations.

TOWNSEND, J. The appellants have filed seven assignments of error, as follows: "(1) The court erred in making the Choctaw and Chickasaw Nations parties to the suit. (2) The court erred in overruling plaintiff's demurrer to and motion to strike out the interplea of the Choctaw and Chickasaw Nations. (3) The court erred in sustaining the demurrers of defendants and Choctaw and Chickasaw Nations to plaintiffs' second amended complaint. (4) The court erred in sustaining the demurrer of the Choctaw and Chickasaw Nations to the answer and reply of plaintiffs to the interplea of said nations. (5) The

court erred in rendering judgment against the plaintiffs in favor of the defendants. (6) The court erred in adjudging possession of the lands sued for to the defendants. (7) The court erred in overruling plaintiffs' motion for a new trial."

The appellants admit that no exception was reserved to the action of the court in making the Choctaw and Chickasaw Nations parties to this action, which ruling of the court is made the first assignment of error, but appellants insist that the second assignment of error covers the same question; as exceptions to the overruling of appellants' demurrer and motion to strike out the interplea and answer of said nations were reserved. The question of the correctness of the ruling of the court in making said nations parties is clearly presented, for, if they were not proper parties to this action, the court should have sustained the motion of appellants, and have stricken them from the record as parties. The attorneys for said nations state that the court made said nations parties by virtue of the requirements of section 2 of the Curtis Act (§ 57r, Ind. Ter. St. 1899), which is as follows: "§ 2. That when in the progress of any civil suit, either in law or equity, pending in the United States court in any district in said territory, it shall appear to the court that the property of any tribe is any way affected by the issues being heard, said court is hereby authorized and required to make said tribe a party to said suit by service upon the chief or governor of the tribe, and the suit shall thereafter be conducted and determined as if said tribe had been an original party to said action." And said attorney says: "We are unable to see how the court below could have taken any other course without violating this section of the law. This proposition argues itself." But is this second section of the Curtis bill in force in the Chickasaw Nation? It seems to have been assumed by the attorneys for said nations, and the court also, that it is. Section 29 of the Curtis bill, which relates to the ratification of the Atoka agree-

ment, contains also this provision: "And if said agreement as amended be so ratified, the provisions of this act shall then only apply to said tribes where the same do not conflict with the provisions of said agreement; but the provisions of said agreement, if so ratified, shall not, in any manner, affect the provisions of section fourteen of this act, which said amended agreement is as follows." Section 29, Curtis Bill (§ 57z19, p. 37, Ind. Ter. St. 1899). It is, therefore, conclusive that the provisions of the Curtis bill are only in force in the Chickasaw Nation where they do not conflict with the provisions of the Atoke agreement. Section 44 of said bill, and which is part of said agreement, contains the following: "Whenever it shall appear to said court, at any stage in the hearing of any case, that the tribe is in any way interested in the subject-matter in controversy, it shall have power to summon in said tribe and make the same a party to the suit and proceed therein in all respects as if such tribe were an original party thereto; but in no case shall suit be instituted against the tribal government without its consent." Section 44, Curtis Bill, (§ 57z44, p. 43, Ind. Ter. St. 1899). It thus is made plain that the tribes must in some way be interested in the subject-matter in controversy before the court has power to summon in said tribe and make the same a party to the suit. What, therefore, is the subject-matter in controversy in this suit? It is an action of unlawful detainer, as appears from the complaint, and is brought under section 2282, Ind. Ter. St.: "2282. When any person shall willfully and with force hold over any lands, tenements or other possessions after the determination of the time for which they were demised or let to him, or shall lawfully and peaceably obtain possession, but shall hold the same unlawfully and by force, or shall fail or refuse to pay the rent therefore when due, and after demand made in writing for the delivery of possession thereof, by the person having the right to such possession, his agent or attorney, shall refuse to quit such possession, such person shall be deemed guilty of an

unlawful detainer." Section 2282, p. 397, Ind. Ter. St. (§ 3348, Mansf. Dig. ) Said statute has been construed by the decisions of the supreme court of Arkansas as follows: "Unlawful detainer is a statutory remedy for the benefit of landlords against tenants who hold over after the expiration of their term. It is founded on a breach of contract implied by law, if not expressed, and may be maintained either by the lessor or his heir or assignee, to whom the land passes." Johnson vs West, 41 Ark. 535. It can be maintained only where the relation of landlord and tenant exists. Mason vs Delancy, 44 Ark. 444; Necklace vs West, 33 Ark. 682; Dortch vs Robinson, 31 Ark. 296. Section 2282—note, p. 397, Ind. Ter. St. 1899 (§ 3348 note, Mansf. Dig.). It thus appears that it can be maintained only where the relation of landlord and tenant exists. It is founded on a breach of contract, implied by law, if not expressed, and is a statutory remedy for the benefit of landlords against tenants who hold over after the expiration of their term. Do the Choctaw and Chickasaw Nations occupy the position of landlord in this action? Is there any contract between the defendants and said nations? And if none of these relations exist, how can it be said that these tribes or either of them are interested in the subject matter in controversy? The Atoka agreement has no express provisions authorizing suits for the recovery of possession of lands by the tribes to be instituted, but the Curtis bill authorized actions to be brought to recover possession only in certain cases, as follows: "That said courts are hereby given jurisdiction in their respective districts to try cases against those who may claim to hold as members of a tribe and whose membership is denied by the tribe, but who continue to hold said lands and tenements notwithstanding the objection of the tribe; and if it be found upon trial that the same are held unlawfully against the tribe by those claiming to be members thereof, and the membership and right are disallowed by the commission to the Five Tribes, or the United States court, and the judgment has become final, then

said court shall cause the parties charged with unlawfully holding said possessions to be removed from the same and cause the lands and tenements to be restored to the person or persons or nation or tribe of Indians entitled to the possession of the same." Section 3, Curtis Bill (§ 57s, p. 28, Ind. Ter. St. 1899). And the manner of instituting such action is provided for, as follows: "(5) That before any action by any tribe or perosn shall be commenced under section three of this act it shall be the duty of the party bringing the same to notify the adverse party to leave the premises for the possession of which the action is about to be brought, which notice shall be served at least thirty days before commencing the action by leaving a written copy with the defendant, or, if he cannot be found, by leaving the same at his last known place of residence or business with any person occupying the premises, over the age of twelve years, or, if his residence or business address cannot be ascertained, by leaving the same with any person over the age of twelve years upon the premises sought to be recovered and described in said notice; and if there be no person with whom said notice can be left, then by posting same on the premises. (6) That the summons shall not issue in such action until the chief or governor of the tribe, or person or persons bringing suit in his own behalf, shall have filed a sworn complaint, on behalf of the tribe or himself, with the court, which shall, as near as practicable, describe the premises so detained, and shall set forth a detention without the consent of the person bringing said suit or the tribe, by one whose membership is denied by it; provided, that if the chief or governor refuse or fail to bring suit in behalf of the tribe then any member of the tribe may make complaint and bring said suit." Sections 5, 6, Curtis Bill (§§ 57u, 57v, p. 29, Ind. Ter. St. 1899.) It would be a fair construction of said Curtis Bill and Atoka agreement to say that by this express provision, authorizing actions for possession by the tribes in the cases therein provided for only, congress did not intend to authorize

action for possession in other cases. But, however this may be congress, in § 10 of said Curtis Bill, has provided as follows "And nothing in this act shall take away the right to maintain an action for unlawful and forcible entry and detainer given by the act of congress passed May second, eighteen hundred and ninety (twenty-sixth United States Statutes, page ninety-five)." Section 10, Curtis Bill (§ 57z, p. 30, Ind. Ter. St. 1899). Hence the action of unlawful detainer as it exists in Arkansas is expressly authorized by the Curtis Bill, and, as there is no allegation in the interplea and answer of the Choctaw and Chickasaw Nations that the relation of landlord and tenant exists by contract, either implied by law or expressed, between either the plaintiff or defendants and nations in this action, said nations in our judgment, are not interested in the subject-matter in controversy in this suit; and therefore the court erred in making them parties to the suit, and the demurrer of the plaintiffs to the interplea and answer of said nations, and the motion to strike out the same by the plaintiffs, should have been sustained.

The original complaint of plaintiffs has not been brought up in this transcript, but their second amended complaint states a good cause of action in unlawful detainer against the defendants, together with a mass of surplusage in answer to the interplea and answer of the Choctaw and Chickasaw Nations, and defendants' demurrer to said second amended complaint should have been overruled.

The answer of defendants, which, upon suggestion by them of diminution of the record filed on the 3d day of March, 1900, and which was brought up to this court by certiorari, must have been their answer to the original complaint, which is not before the court; and the second amended complaint, which was filed by leave of the court, and which, in our judgment, states a good cause of action against defendants in unlawful detainer, and to which defendants' demurrer in our judgment should have been

overruled,—would leave said second amended complaint without answer, and it was therefore error for the court to render judgment for the defendants. In our judgment, in this action the citizenship of the parties was immaterial.

For the errors above set forth, the case is reversed and remanded.